NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| John MEHALIS<br><br>    Plaintiff,<br><br>    v.<br><br>FRITO-LAY, INC.,<br><br>    Defendant. | Civil No. 08-1371 (AET)<br><br>**MEMORANDUM OPINION<br>& ORDER** |
| Curtis THIBODEAU,<br><br>    Plaintiff,<br><br>    v.<br><br>FRITO-LAY, INC.,<br><br>    Defendant. | |

THOMPSON, U.S.D.J.

## I.   INTRODUCTION

This matter comes before the Court on Defendant Frito-Lay, Inc.'s ("Frito-Lay") Motions for Summary Judgment against John Mehalis [docket # 50] and Curtis Thibodeau [51].  Plaintiffs Mehalis [53] and Thibodeau [54] oppose the respective motions.  The Court has decided these motions after taking into consideration the parties' submissions and without oral argument pursuant to Federal Rule of Civil Procedure 78(b).  For the reasons set forth below, Defendant's motions will be granted.

1

II.     BACKGROUND

Plaintiffs Mehalis and Thibodeau both worked as fleet technicians (mechanics) in Frito-Lay's garage site in Franklin Park, New Jersey, starting in December 2004 and June 2005 respectively.  As the only two fleet technicians at the facility, Plaintiffs were responsible for maintaining, servicing, and repairing the approximately 80 bulk trucks and route trucks in the facility's fleet.  On February 7, 2007, Frito-Lay terminated Mehalis.  On February 23, 2007, Frito-Lay terminated Thibodeau.

Plaintiffs allege that during the course of their employment they continuously raised concerns they had with respect to what they believed were safety issues involving the truck fleet and some of Defendant's practices.  Beginning in mid to late 2006, Thibodeau allegedly began making these complaints in writing.   On or about May 5, 2006, Thibodeau allegedly wrote the Department of Labor requesting information as to whether there was a minimum mechanic to truck ratio.  *See* (Thibodeau Opp'n at 6).  On or about October 4, 2006, Thibodeau also allegedly sent a letter to the Human Resource Department describing safety issues with the fleet vehicles and noting that Tyler Montgomery, the fleet manager, did not grant Thibodeau's request for certain shop equipment, two additional full time mechanics, newer spare trucks, and better working conditions. *See* (Thibodeau Ex. H).[1]   Thibodeau and Mehalis additionally allege that during this period they began making verbal complaints concerning vehicle safety.  Plaintiffs claim that they experienced acts of retaliation by Defendant, including both mechanics receiving the exact same Expectations Actions List on January 17, 2007, despite having never previously been disciplined.   *See* (Thibodeau Opp'n at 28).  Following the January 17, 2007 meeting, Thibodeau alleges that he sent a second letter to Defendant's Human Resources Department setting forth complaints about the safety

---

[1] Defendant maintains that it has no record of this letter.  (Def.'s Statement of Undisputed Material Facts (Thibodeau) ¶ 58).  Defendant has further suggested that this letter may have been fabricated by Thibodeau after his termination. (Def.'s Reply Br. (Thibodeau) at 5 n. 1).  The Court rejects this argument for the purposes of its review of the pending motions.

of the fleet. *See* (Thibodeau Ex. I).[2] On January 21, 2007, Thibodeau called Frito-Lay's "Speak Up" hotline where employees can call to raise concerns about a business situation that may be inconsistent with the company's Code of Conduct, values, policies or the law. Thibodeau complained that "the fleet is in really bad shape" and noted that he felt that Montgomery had intimidated him into signing the Expectations Action List. *See* (Thibodeau Ex. N). Thibodeau called the hotline again on January 31, 2007 and repeated his complaints. (*Id*). Plaintiffs allege that as a result of these complaints Defendant retaliated against both Plaintiffs by terminating Mehalis' employment on February 7, 2007, and Thibodeau's employment on February 23, 2007.

In contrast to the picture presented by Plaintiff, Defendant maintains that during the period of time Plaintiffs were employed at the Franklin Park facility, Montgomery received numerous complaints from several sales and operations managers that Mehalis and Thibodeau were failing to repair trucks in the fleet. (Def.'s Statement of Undisputed Material Facts (Mehalis) ¶ 29). Montgomery purportedly discussed these complaints with Plaintiffs on several occasions. (*Id*. ¶ 33). On January 17, 2007, Montgomery had separate formal meetings with Mehalis and Thibodeau and provided each with a detailed Expectations Action List purportedly designed to address problems observed at the facility. (*Id*. ¶ 34). The list included a series of bullet points about the duties and responsibilities that were expected of a Frito-Lay mechanic. (*Id*. ¶ 35). The list also flagged issues observed within the facility including:

- Prioritization of repairs—safety issues addressed first, prioritize out of service list and repairs made in timely matter.
- Multiple failures on several trucks—Research truck history and fix the re-occurring issues.
- When truck is brought in for PM, a thorough inspection should be done to identify

---

[2] Defendant also maintains that it has no record of this letter. *See* (*id*).

ALL issues.

(Wolin Certification, Ex. AA). On February 1, 2007, Darren Patnode, one of the fleet leads, allegedly found Mehalis in the midst of filling out six PM forms (physical inspection forms) at the same time. (Def.'s Statement of Undisputed Material Facts (Mehalis) ¶ 44). Defendant contends that this was an "obvious problem" because under company policy a mechanic should complete the PM form as he is performing the actual physical inspection of each truck, and no trucks were present. (*Id.* ¶ 45). Moreover, the PM forms indicated that the safety inspections for these trucks had been completed on January 31, 2007, whereas the PM forms were not complete (even though it was February 1, 2007) and Mehalis admitted that the inspection work had not been completed. *See* (*id.* ¶¶ 46-55). Mehalis was suspended while an investigation of the trucks at issue was being performed. (*Id.* ¶ 58). In the course of the investigation, Defendant discovered numerous problems with the vehicles which had not been fixed or noted on the PM forms. (*Id.* ¶ 63). As a result, on February 7, 2007, Montgomery terminated Mehalis' employment for falsification of company records in violation of Frito-Lay's Code of Conduct. (*Id.* ¶ 71).

Shortly thereafter, several mechanics from other regions came to the Franklin Park facility to assist Thibodeau. (Def.'s Statement of Undisputed Material Facts (Thibodeau) ¶ 46). The mechanics discovered significant issues with the Franklin Park fleet which they ascribed to the failure of Mehalis and Thibodeau to perform proper preventative maintenance. (*Id.* ¶ 47). On February 14, 2007, a visiting mechanic reviewed a complaint received by a sales representative concerning Truck R99038 and discovered that the left front brake assembly was totally worn out and reported the problem to Montgomery. (*Id.* ¶ 50). The visiting mechanic noted that Thibodeau allegedly performed a safety PM inspection of Truck R99038 on February 4, 2007 and further opined that preventative maintenance had not been properly performed because the brakes could not have deteriorated to that extent in ten days. *See* (*id.* ¶ 52). In view of this safety violation, as well

4

as the additional complaints he had received from sales managers, sales representatives, and visiting mechanics, on February 23, 2007, Montgomery terminated Thibodeau's employment. (*Id*. ¶ 54).

Based on these events Plaintiffs separately brought suit against Frito-Lay in the Superior Court of New Jersey, Law Division, Somerset County, seeking relief under New Jersey's Conscientious Employee Protection Act ("CEPA"), N.J.S.A. § 34:19-1, *et seq*. Upon removal to this Court, given the similarity of the complaints, the cases were consolidated. [2]. Defendant Frito-Lay now moves for summary judgment as to the claims asserted against it.

### III. DISCUSSION

A. Legal Standard on Summary Judgment

Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if it will "affect the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, a district court considers the facts drawn from "the pleadings, the discovery and disclosure materials, and any affidavits" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." Fed. R. Civ. P. 56(c); *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002) (internal quotations omitted). The non-movant, however, "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995); *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 228(3d Cir. 2009) ("[S]peculation and conjecture may not defeat a motion for summary judgment.").

In resolving a motion for summary judgment, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-

5

sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. More precisely, summary judgment should be granted if the evidence available would not support a jury verdict in favor of the nonmoving party. *Id.* at 248–49. The Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. However, "[i]n considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence . . . ." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). But, a mere "scintilla of evidence," without more, will not give rise to a genuine dispute for trial. *Anderson*, 477 U.S. at 252. In the face of such evidence, summary judgment is still appropriate "[w]here the record . . . could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Summary judgment motions thus require judges to 'assess how one-sided evidence is, or what a 'fair-minded' jury could 'reasonably' decide.'" *Williams v. Borough of W. Chester, Pa.*, 891 F.2d 458, 460 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 265 (Brennan, J., dissenting)). Properly applied, Rule 56 will "isolate and dispose of factually unsupported claims or defenses" before those issues come to trial. *Celotex*, 477 U.S. at 323–24.

    B. Conscientious Employee Protection Act

CEPA was enacted to protect employees who report illegal or unethical actions in the workplace, and also to encourage such reporting. *See Fleming v. Correctional Healthcare Solutions, Inc.*, 751 A.2d 1035, 1038–39 (N.J. 2000). Under CEPA, it is unlawful for an employer to retaliate against an employee because the employee discloses an activity of the employer that the employee reasonably believes is fraudulent, criminal, or in violation of the law. N.J. Stat. Ann. § 34:19-3(c). Because CEPA is remedial in nature, New Jersey courts have held it should be

6

construed liberally so as to achieve its important social goals.  *See, e.g.*, *Barratt v. Cushman & Wakefield of N.J., Inc.*, 675 A.2d 1094, 1098 (N.J. 1996); *Fleming*, 751 A.2d at 1038–39; *Kolb v. Burns*, 727 A.2d 525, 531 (N.J. Super. Ct. App. Div. 1999).  New Jersey courts apply the familiar *McDonnell-Douglas* burden-shifting framework in evaluating claims under the statute.  *See Blackburn v. UPS, Inc.*, 179 F.3d 81, 92 (3d Cir. 1999).  In order to establish a prima facie claim of retaliation under CEPA, a plaintiff must prove by a preponderance of the evidence that:

> (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a "whistle-blowing" activity described in N.J.S.A. § 34:19-3c; (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.

*Massarano v. N.J. Transit*, 948 A.2d 653, 662 (N.J. Super. Ct. App. Div. 2008) (quoting *Dzwonar v. McDevitt*, 828 A.2d 893, 900 (N.J. 2003)).  Once a plaintiff has established a prima facie case, the burden then shifts to the employer to produce a legitimate, nondiscriminatory reason for taking the employment action.  *See Klein v. U.M.D.N.J.*, 871 A.2d 681, 687 (N.J. Super. Ct. App. Div. 2005).  If an employer provides evidence of a nondiscriminatory reason for its action, it is then the employee's burden to demonstrate pretext by a preponderance of the evidence.  *See id.*

Frito-Lay contends, among other things, that Plaintiffs have not established a prima facie case under the CEPA because: (1) Plaintiffs cannot establish that they engaged in any "whistle-blowing activity" as described in N.J.S.A. § 34:19-3c; and (2) Plaintiffs cannot causally connect the alleged whistle-blowing activity with their termination.  Defendant further argues that, even assuming that Plaintiffs can present a prima facie case of retaliation, Plaintiffs have not presented any evidence rebutting Frito-Lay's legitimate, non-discriminatory reasons for its actions.   In response, Plaintiffs contend that their various complaints about the safety conditions of the Frito-Lay fleet were protected "whistle-blowing activity" and that "[v]iewing the time line [sic] of

7

events," a reasonable jury could conclude that Plaintiffs were terminated "for [their] complaints and the trouble and headaches this caused to Montgomery, Thompson, and Patnode, and to the company as a whole." (Thibodeau Opp'n at 28). The Court will consider these matters in turn.

As an initial matter there is some question as to whether the alleged complaints made by Plaintiffs should be considered "whistle-blowing activity" as described in N.J.S.A. § 34:19-3c. Defendant correctly notes that New Jersey courts have held that where a plaintiff is simply performing his own job duties, that is not whistle-blowing under the CEPA. *See Massarano*, 948 A.2d at 663; *Aviles v. Big M, Inc.*, A-4980-09, 2011 WL 780889, at * 5 (N.J. Super. Ct. App. Div. Mar. 8, 2011); *White v. Starbucks*, A-3153-09, 2011 WL 6111882, at * 9 (N.J. Super. Ct. App. Div. Dec. 9, 2011) (agreeing that plaintiff did not engage in whistle-blowing activity because "the issues on which she bases her claim fall within the sphere of her job-related duties"). Arguably because Plaintiffs had to ensure the safety and reliability of the Frito-Lay fleet vehicles, any inquiries and concerns Plaintiffs raised about the unsafe condition of the fleet and/or need for additional equipment/manpower should be considered part of their general duties as mechanics.

Here, even if the Court were to find that Plaintiffs' complaints should properly be considered "whistle-blowing activity" under a broad reading of the CEPA, after reviewing all of the evidence, the Court finds that Plaintiffs' arguments with respect to causation are deficient at this stage of litigation. New Jersey courts require that a plaintiff demonstrate causation "by presenting either direct evidence of retaliation or circumstantial evidence that justifies an inference of retaliation." *Zaffuto v. Wal-Mart Stores, Inc.*, 130 F. App'x 566, 569 (3d Cir. 2005); *Bocobo v. Radiology Consultants of S. Jersey, P.A.*, No. 02-1697, 2005 WL 3158053, at *3–4 (D.N.J. Nov. 21, 2005). This is not a burden that can be met by mere speculation: a plaintiff must demonstrate a factual nexus between the protected activity and the retaliatory employment action. *See Wheeler v. Twp. of Edison*, No. 06-5207, 2008 WL 1767017, at *9 (D.N.J. Apr. 15, 2008); *Hancock v. Borough*

8

*of Oaklyn*, 790 A.2d 186, 194 (N.J. Super. Ct. App. Div.2002). Temporal proximity alone is insufficient to establish causation under the CEPA. *See Hancock v. Borough of Oaklyn*, 790 A.2d 186, 194 (N.J. Super. Ct. App. Div. 2002) (citing *Bowles v. City of Camden*, 993 F. Supp. 255, 263–64 (D.N.J.1998)).

Plaintiffs concede that the decision to terminate them was made by Montgomery alone. Plaintiffs, however, have not offered any non-speculative evidence to suggest that Montgomery, knew about, let alone acted in consideration of, Plaintiffs' alleged whistle-blowing activities. Plaintiffs merely assert that:

> One must question why, if there were supposedly so many issues with both individuals' work performance, and so many (identical) criticisms, this was never an issue before, but only became problematic, at the identical time, after they complained about the multitude of safety issues involving the fleet? It is respectfully suggested that the most obvious reason, and the only reason that truly makes sense is that this was retaliation for Plaintiffs' protected whistleblowing activity.

(Thibodeau Opp'n at 28). Plaintiffs' whimsical assertions, however, at this stage are insufficient to avoid summary judgment. The record before the Court is empty as to the October 4, 2006 letter being received by Defendant, let alone that Montgomery was aware of the letter or the contents thereof. Nor have Plaintiffs proffered any evidence which would suggest that Montgomery initiated the January 21, 2007 meeting and development of the Expected Actions List to retaliate against Plaintiffs' alleged whistle-blowing. Thibodeau concedes that he never sent copies of the letter to Montgomery or otherwise mentioned that he sent the letter. (Thibodeau's Resps. to Def's Statement of Facts ¶¶ 59–60). Moreover, when Thibodeau was asked at deposition whether he expressed any concerns with respect to safety issues, he responded:

> I don't know if I actually said they were safety issues, you know. I didn't run up to them and say you are violating the law. . . . I would go and talk to Tyler basically and tell him hey, the springs are broken . . . I didn't say Tyler, it's a safety issue. . . . I don't think I said this is a safety violation and I'm running to OSHA to tell on ya. It wasn't like that.

9

(Wolin Cert., Ex. C 575:19–576:7).  Additionally, Mehalis has alleged no specific whistle-blowing activity likely known by Montgomery.  Mehalis' alleged whistle-blowing activities largely consist of statements made prior to Montgomery being hired and/or interactions with other managers without disciplinary authority over him.  A potential "retaliatory motive on the part of non-decision-makers is not enough to satisfy the causation element of a CEPA claim."  *Caver v. City of Trenton*, 420 F.3d 243, 258 (3d Cir. 2005).

Although Plaintiffs suggest that they experienced "bullying" and "on-going antagonism" prompting Thibodeau to purchase a tape recorder, *see* (Thibodeau Opp'n at 25), Plaintiffs have described no specific incidents that a reasonable juror could rely on in determining that Plaintiffs' whistle-blowing caused the adverse employment actions in this case.  Plaintiffs have provided no evidence to suggest that any of the managers were aware of, let alone acted in consideration of, Plaintiffs' outside complaints in engaging in the alleged "bullying."  In the absence of any record evidence supporting causation, this Court finds that there is no material fact at issue with regard to causation.

Finally, even if the Court were to assume *arguendo* that Plaintiffs have presented sufficient evidence to support a prima facie case of causation, Defendant has presented ample evidence of legitimate, non-discriminatory reasons for their actions towards Plaintiffs.  Defendant contends Plaintiffs were reprimanded and given the Expectation Actions List after numerous complaints by sales representatives concerning the condition of the fleet.  Moreover, Defendant contends that even after receiving the Expectation Actions List Mehalis was found falsifying documents and Thibodeau failed to perform his duties as a mechanic leading to their respective terminations.

Having found that Defendant has successfully articulated a legitimate, non discriminatory reason for its decision to terminate the Plaintiffs, which is supported by evidence in the record, the burden would shift back to Plaintiffs to show that there is a genuine issue for trial.  *Blackburn*, 179

F.3d at 94 (citing Fed. R. Civ. P. 56). Here, Plaintiffs have presented no admissible evidence to indicate that the Frito-Lay's reasoning was "implausible, inconsistent, incoherent, or contradictory." *Bocobo*, 2012 U.S. App. LEXIS 7642, at *23; *see also Blackburn*, 179 F.3d at 103; *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). Thibodeau attempts to create a contradiction in Frito-Lay's reason for his termination by alleging, in his certification, that he never performed the safety inspection on February 4th as set forth in the termination memorandum. This certification, however, is not evidence. *See* Fed. R. Civ. P. 56(c)(4). Moreover, an unsworn certification such as this, which is not supported by any documentary or testimonial evidence, is plainly insufficient to defeat summary judgment. *See, e.g., Byrne v. Monmouth Cnty. Dep't of Health Care Facilities*, 372 F. App'x 232, 234 (3d Cir. 2010). Therefore, the Court does not consider any allegation stated in this certification as sufficient to create a factual dispute precluding summary judgment. Because Plaintiffs have not established a prima facie case or met their burden in presenting evidence of pretext, the Court does not believe a reasonable jury could find in their favor. Accordingly, judgment will be entered on Plaintiffs' CEPA claims in favor of the Defendant.

IV.     CONCLUSION

For the reasons stated above, it is on this 29th day of June, 2012,

ORDERED that Defendant Frito-Lay, Inc.'s Motions for Summary Judgment against John Mehalis [docket # 50] and Curtis Thibodeau [51] are hereby GRANTED; and it is

ORDERED that this case is hereby CLOSED.

/s/ Anne E. Thompson
ANNE E. THOMPSON, U.S.D.J.